UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDREA L. MARION,

        Plaintiff,

    v.                                            23-CV-294-LJV
                                                  DECISION & ORDER

TRANSITOWNE JEEP CHRYSLER
DODGE RAM WILLIAMSVILLE,

        Defendants.
_____

On March 31, 2023, the pro se plaintiff, Andrea L. Marion, commenced this action against Transitowne Jeep Chrysler Dodge Ram Williamsville ("Transitowne") under the federal Truth in Lending Act (the "TILA"),[1] and alleging that Transitowne also breached the fiduciary duty that it owed to her. Docket Item 1. On June 13, 2024, Transitowne moved to dismiss the complaint.[2] Docket Item 4. Two weeks later, Marion responded, Docket Item 9; on July 22, 2024, Transitowne replied, Docket Item 10; and on August 9, 2024, Marion filed a sur-reply, Docket Item 12.[3]

---

[1] As addressed in more detail below, Marion styles her first cause of action against Transitowne as "Consumer Protection from Deceptive Acts and Practices," Docket Item 16 at 11 (some capitalizations omitted), but in it she raises a TILA claim as well as claims under New York law.

[2] The complaint originally named Five Star Bank as a defendant, *see* Docket Item 16 (complaint filed as Docket Item 1 with personally identifiable information redacted), but Marion has since dismissed her claims against that defendant, Docket Items 18 and 19.

[3] The Court construes Marion's "Reply Memorandum of Law in Further Support of Plaintiff's Opposition to Transitowne's Motion to Dismiss" filed on August 9, 2024, *see* Docket Item 12 (some capitalizations omitted), as a sur-reply.

For the reasons that follow, Transitowne's motion to dismiss is granted, but the Court gives Marion the opportunity to file an amended complaint stating a viable TILA claim that is not time barred.[4]

## BACKGROUND[5]

On August 7, 2020, Marion purchased a vehicle from Transitowne "and financed the purchase through Five Star Bank with a down payment of $5[,]000." Docket Item 16 at 4. As part of that transaction, Marion signed a Retail Instalment Contract under which she agreed to make monthly payments. *See id.* at 7, 20-22 (Marion's copy of Retail Instalment Contract), 29-30 (Five Star Bank's copy of Retail Instalment Contract). Marion says that at the time of purchase, she was "advised by [her] sales representative Juan Nieves that [her] monthly payments [would be] $590 for 60 months." *See id* at 4.

Marion "made payments to Five Star Bank up until May 2022," when she "was affected by COVID-19[,] which led to [her] being out of work for a few weeks and [un]able to make [her] payments on time." *See id.* To make up for those missed

---

[4] Because Marion's initial complaint included personally identifiable information, it was sealed and a redacted version was made accessible on the docket. *See* Docket Item 16. Citations in this decision are to the redacted version of the complaint. If Marion files an amended complaint, she should redact any personally identifiable information.

[5] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. Of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The following facts are taken from the complaint, Docket Item 16, and the documents attached to the complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting that a complaint is deemed to include any written instrument attached to the complaint, incorporated by reference, or "integral" to the complaint). Throughout this decision, page numbers in docket citations refer to ECF pagination.

payments, after speaking with an individual named Doug Roach at Five Star Bank, Marion made a $1,194.99 payment "to bring the [loan] account current for June [and] July 2022." *Id.* at 4, 27 (identifying Doug Roach as a "Recoveries Manager" at Five Star Bank). Marion scheduled the next two payments for August and September 2022, but those payments fell through because her "bank account was compromised and [she] had to place a freeze on [her] account." *Id.* The complaint does not say whether Marion ever resumed making payments.

Marion says that during the time when she was having difficulty making her payments, she happened to re-examine the Retail Instalment Contract and discovered a few issues. *Id.* at 7. For example, she "noticed that [the] contract only had [her] signature on it," did not disclose the number of monthly payments she needed to make, and spelled her last name incorrectly. *Id.* She "also noticed that [her] down payment was [listed as] $5[,]000," which she says is at odds with her copy of a receipt showing that "4[,]066.50 was applied to the downpayment." *Id.*; *see also id.* at 23 (receipt).

This led Marion to request her "contract, credit application[,] and other documents related to [the car purchase] from both" Transitowne[6] and Five Star Bank. *See id.* at 7.[7] Marion says that while she waited for those documents to arrive, she also "noticed [that her] credit report[s]" contained inaccurate information—presumably

---

[6] The complaint addresses later communications with Transitowne but does not appear to include a response from Transitowne to this request.

[7] The letter from Five Star Bank dated September 12, 2022, notes that it was sent in response to Marion's inquiry of September 1, 2022, "regarding Five Star Bank's reporting of information related to your account to the credit reporting agencies." Docket Item 16 at 27. The Court presumes that the September 1 inquiry is the one to which the complaint refers.

related to her account with Five Star Bank.  *See id.*  More specifically, Marion says, her account status was labeled as "charged off and closed," one credit report showed "no payment history," and there was nothing showing that "it [sic] was ever disputed."  *Id.*  So Marion sent "dispute letters requesting . . . reinvestigation."[8]  *See id.*

Marion received two responses from Five Star Bank.  The first, dated September 12, 2022, said that Five Star Bank had completed an investigation and "determined that the information reported to the credit reporting agencies" was "correct."  *Id.* at 27.  The second, sent a few weeks later, informed Marion that "no further action [wa]s needed" in response to her inquiry because she already had been told "that the account is reported accurately."  *Id.* at 28.

Marion again filed a complaint with Five Star Bank, this time "requesting a reinvestigation" into her credit report and alleging violations of the TILA premised on "missing disclosures."  *Id.* at 7.  Five Star Bank responded to Marion on November 8, 2022, telling her that the $5,000 down payment had been correctly applied in the Retail Instalment Contract, that she had been properly notified that the Retail Instalment Contract would be assigned to Five Star Bank, that various fees were "appropriate and properly disclosed," and that her car insurance premium was not disclosed because it was "not part of the amount financed by the [R]etail [I]nstalment [C]ontract."  *Id.* at 53-

---

[8] The complaint says that Marion sent the dispute letters to Equifax and Transunion but refers to a response that she received from Five Star Bank.  Docket Item 16 at 7.  This Court therefore presumes that the dispute letters to which the complaint refers were also sent to Five Star Bank.

4

55.[9]  That letter also informed Marion that Five Star Bank would not respond further.  *Id.* at 55.

As part of its response to Marion's complaints, Five Star Bank sent her a copy of the Retail Instalment Contract.  *Id.* at 8, 28 (letter from Five Star Bank dated September 28, 2022, enclosing "requested" documentation).  Marion says that when she reviewed that copy, she "noticed a few discrepancies" between it and the copy of the contract she received from Transitowne "on the date of the transaction."  *Id.* at 8.  According to Marion, the copy she had received on the date of the transaction was not signed by Transitowne and did not include the total number of payments that she needed to make.  *See id.*  In contrast, the copy she received from Five Star Bank shows that she would make 84 payments— "which is not what [she] agreed to when purchasing the vehicle"— and had two additional signatures, one from a Transitowne representative and one from a notary who did not witness Marion's signing the contract.  *Id.*  Marion also noticed that the copy of her credit application was dated August 7, 2020, even though she visited Transitowne to submit her credit application on August 6, 2020.  *Id.*

Around this time, Marion also reached out to Transitowne, saying that it had violated the TILA and should refund her down payment, presumably based on the "discrepancies" she noticed.  *Id.* at 8, 64-65.  But Transitowne "ignore[d]" her request for a refund as well as her request for paperwork that she could compare to her own copies and the copies she had received from Five Star Bank.  *Id.*  Marion therefore filed

---

[9] Five Star Bank's response dated November 8, 2022, refers to a March 2022 "CFPB complaint."  Docket Item 16 at 53.  The complaint in this case does not provide any information about any complaints that Marion made to the CFPB. *See generally* Docket Item 16.

a demand for arbitration against both Five Star Bank and Transitowne in November 2022.  *Id.* at 8, 98.

Through its attorney, Transitowne informed Marion that "there was no arbitration agreement between" them.  *Id.* at 9.  Transitowne also told Marion that it had complied with TILA disclosure requirements and asked that she "[c]ease and [d]esist" contacting Transitowne.  *Id.* at 62-63.  For its part, Five Star Bank applied in New York State Supreme Court, Erie County, for a permanent stay of the arbitration proceeding initiated by Marion, which was granted on February 16, 2023.  *Id.* at 9, 74-77.

Marion then commenced this action on March 31, 2023.  Docket Item 1.

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

6

**DISCUSSION**

Marion asserts two causes of action against Transitowne—one for breach of fiduciary duty and one titled "Consumer Protection from Deceptive Acts and Practices"—the latter accusing Transitowne of common law fraud as well as violations of both the TILA and New York General Business Law.  See Docket Item 16 at 11-17 (some capitalizations omitted).

I.  **FEDERAL CLAIMS**

The only federal claim that Marion raises against Transitowne is one under the TILA.  "The purpose of the TILA is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  *Davis v. Westlake Servs.*, 2025 WL 239411, at *2 (S.D.N.Y. Jan. 16, 2025) (quoting 15 U.S.C. § 1601(a)).  The "TILA requires that creditors provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Fiorenza v. Fremont Inv. & Loan*, 2008 WL 2517139, at *2 (S.D.N.Y. June 20, 2008) (internal quotation marks omitted).

When a creditor does not make the required disclosures, the TILA "provides for a private right of action for damages."[10]  *Hernandez v. Saybrook Buick GMC, Inc.*, 505 F.

---

[10] Marion requests both damages and "the rescission" of the Retail Instalment Contract under the TILA.  Docket Item 16 at 14.  But a borrower's statutory right of rescission under the TILA, *see* 15 U.S.C. § 1635(a), applies only "to transactions in which the creditor acquires a security interest in the borrower's principal dwelling."  See *Yarborough v. Queens Auto Mall, Inc.*, 2010 WL 1223584, at *2 (E.D.N.Y. Mar. 23, 2010).  Because Marion does not allege that the Retail Instalment Contract involved any

7

Supp. 3d 93, 103 (D. Conn. 2020) (quoting *Rodriguez v. Auto Sales, Inc.*, 477 F. Supp. 2d 477, 479 (D. Conn. 2007) (internal quotation marks omitted)); *see also* 15 U.S.C. § 1640 (TILA's private right of action for damages).  But "[r]egardless of whether [a p]laintiff was unfairly taken advantage of in the overall transaction, there is no TILA violation where all of the financial terms of the transaction were set forth in full." *Hernandez*, 505 F. Supp. 3d at 104 (quoting *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 307 (E.D. Pa. 2016) (alteration and internal quotation marks omitted)).

Marion says that Transitowne violated the TILA when it did not inform her of the number of payments she would be making under the Retail Instalment Contract.  *See* Docket Item 16 at 11.  In response, Transitowne says that Marion's claim is time-barred by the one-year statute of limitations for damage claims under the TILA.  Docket Item 4-1 at 13.

Transitowne is correct that "[p]rivate actions for damages based on TILA violations are subject to a one-year statute of limitations."  *Grimes v. Fremont Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011); *see also McAnaney v. Astoria Fin. Corp.*, 2007 WL 2702348, at *12 (E.D.N.Y. Sept. 12, 2007) ("[W]here a damages claim under TILA is time-barred, the Court is prohibited from even reaching the question of whether the defendant has violated [the] TILA.").  Moreover, "[i]t is well-settled law that where a claim for damages under [the] TILA is premised on the failure to provide material disclosures, the date of the occurrence of the violation is no later than the date the

---

security interest in her principal dwelling, and because the contract language explicitly contemplates a security interest in the purchased vehicle, *see* Docket Item 16 at 20 (Retail Instalment Contract section noting that purchaser was "giving a security interest in the motor vehicle being purchased"), statutory recission under the TILA does not apply here.

8

plaintiff enters the loan agreement." *Williams v. Ocwen Loan Servicing, LLC*, 2020 WL 5757640, at *10 (E.D.N.Y. Sept. 27, 2020). Here, Marion entered into the Retail Instalment Contract on August 7, 2020, Docket Item 16 at 4, so the commencement of this action on March 31, 2023, appears to be outside the one-year statute of limitations.

Marion says that her TILA claim is nevertheless timely because the doctrine of equitable tolling applies. Docket Item 9 at 6.[11] But she has not alleged anything that might warrant equitable tolling.

"[I]n cases involving [the] TILA, the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself* is necessary to equitably toll the running of the statute of limitations." *Grimes*, 785 F. Supp. 2d at 286; *see also Gorbaty v. Wells Fargo Bank, N.A.*, 2014 WL 4742509, at *12 (E.D.N.Y. Sept. 23, 2014) ("[C]ourts generally hold that 'in a TILA . . . case, equitable tolling will not be applied unless [a] plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non[]disclosure that forms the basis of her claims." (quoting *Futterman v. Wash. Mut. Bank*, 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010) (alteration omitted)). And Marion does not allege that Transitowne said or did anything fraudulent beyond the alleged nondisclosures themselves.

Marion says that Transitowne did not respond to her request for copies of the relevant paperwork so that she could compare them to her own copy and the copies she received from Five Star Bank. Docket Item 16 at 8. But even if that inaction might

---

[11] Marion also argues that her claims are timely under the continuing violation doctrine. Docket Item 9 at 6-7. But "[d]istrict courts in this circuit have held that the continuing violation doctrine does not apply to TILA claims." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 n.1 (2d Cir. 2018) (summary order) (collecting cases).

be construed as an affirmative act of concealment, it took place after the one-year statute of limitations already expired. More specifically, Marion alleges that this non-response occurred in late 2022, *see id.* (alleging that Marion sent letters to Transitowne in September and October 2022 but they "ignored [her] requests for documentation"), more than a year after she signed the contract at issue in August 2020, *see* Docket Item 16 at 4. So even if that failure to respond might have tolled the statute of limitations, it does not save Marion's claim. *See Cardiello v. The Money Store*, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001) (concluding that equitable tolling under TILA was not warranted where complaint did not allege defendant "took actions . . . during the one-year statute of limitations period[] in an attempt to fraudulently conceal plaintiff's cause of action").

Marion also says that this action is timely in light of "the discovery rule under TILA," as she filed her complaint within one year of discovering the purported TILA violation. *See* Docket Item 9 at 8. But Marion does not explain what she means by "the discovery rule under [the] TILA." What is more, "courts in this circuit have consistently stated that TILA's statute of limitations for damages claims runs from the time of the occurrence, not the time of [the] discovery [of the nondisclosure]." *Smith v. Mills*, 2021 WL 4133867, at *4 (E.D.N.Y. Sept. 10, 2021) (internal citations and quotation marks omitted).[12]

---

[12] To the extent that other courts have recognized a "discovery rule" allowing TILA claims to run from the time a plaintiff discovered the alleged nondisclosure, that rule applies "solely to claims arising from 'open-end' credit transactions" involving open lines of credit. *See McAnaney*, 2007 WL 2702348, at *6 (citing 15 U.S.C. § 1602(l)). Here, the relevant loan would seem to be a classic example of a closed-end credit transaction involving a one-time loan. *See Cardiello*, 2001 WL 604007, at *3 n.8 (listing mortgages and auto loans as examples of closed-end credit transactions).

Marion's TILA claim therefore appears to be time-barred.  District courts should generally give a pro se plaintiff the chance to amend the complaint, however, unless there is no possibility of stating a viable claim and amendment therefore would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (district courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").  Because it is possible that Marion might plead facts demonstrating that her claims are not time-barred, this Court cannot say conclusively that any amendment would be futile.  Marion may therefore amend her complaint to allege facts stating a viable claim in light of the analysis above.

## II.    STATE LAW CLAIMS

Marion's other claims against Transitowne for breach of fiduciary duty, breach of the New York General Business Law, and common law fraud all arise under state law. To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the federal court has jurisdiction based on the parties' diversity of citizenship or plead a related federal claim giving the court supplemental jurisdiction over the state law claim.  A "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[A court] cannot, however, decline to consider claims under state law if it has original diversity jurisdiction to consider those claims."  *Gibson v. Pasta City*, 2023 WL 8188431, at *5 n.3 (S.D.N.Y. Nov. 27, 2023) (citing 28 U.S.C. § 1332(a)).

Although Marion invoked only this Court's federal question jurisdiction, *see* Docket Item 16 at 145, in deference to her pro se status, the Court addresses whether it has diversity jurisdiction. To establish jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, a plaintiff must allege that the plaintiff and defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Moreover, "[t]o ensure that diversity jurisdiction does not flood the federal courts with minor disputes, [section] 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Estate of Gallo v. Bob Evans Restaurant*, 2019 WL 350163, at *1 (W.D.N.Y. Jan. 29, 2019) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).

Although there may well be diversity of citizenship between Marion and Transitowne,[13] Marion explicitly requests $30,000 in damages—less than the $75,000 threshold. *See* Docket Item 16 at 14-17 (requesting $20,000 and $10,000, respectively, in the two claims against Transitowne). If Marion wishes to bring state law claims under the Court's diversity jurisdiction, then any amended complaint must plead that the parties are citizens of different states and that her claims exceed $75,000.

Generally speaking, "when the federal[]law claims have dropped out of the lawsuit in its early stages and only state[]law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental

---

[13] The complaint suggests, but does not specifically allege, that Marion is a citizen of Georgia and Transitowne is a New York corporation with a principal place of business in New York. *See* Docket Item 16 at 2, 145.

12

jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

If Marion files an amended complaint stating a viable federal claim or demonstrating that the diversity of citizenship and amount-in-controversy requirements are satisfied, this Court will have subject matter jurisdiction over her claims. If not, the Court will decline to exercise supplemental jurisdiction over her state law claims.

## CONCLUSION

For the reasons stated above, Transitowne's motion to dismiss, Docket Item 4, is GRANTED. Nevertheless, Marion may file an amended complaint within 45 days of the date of this order that corrects the deficiencies noted above or otherwise demonstrates that this Court has jurisdiction over her timely claims. Marion's motion to expedite ruling on Transitowne's motion to dismiss, Docket Item 14, is DENIED as moot.

Marion is advised that an amended complaint is intended to **completely replace** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

No later than 30 days after any amended complaint is filed, Transitowne may answer, move against, or otherwise respond to the amended complaint. If Marion does not amend her complaint within 45 days of the date of this order, then the Clerk of the Court shall close the case without further order.

This Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals

in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:  March 31, 2025
          Buffalo, New York

          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE