UNITED STATES DISTRICT COURT
FILED
MAY 5 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

IN THE UNITED STATES DISTRICT COURT

FOR WESTERN DISTRICT OF NEW YORK

ANDREA L MARION,

        Plaintiff,

vs.

TRANSITOWNE JEEP CHRYSLER DODGE
RAM OF WILLIAMSVILLE,

        Defendant

Case No.: 1:23-cv-00294-LJV

**NOTICE OF FILING FIRST AMENDED
COMPLAINT**

     **PLEASE TAKE NOTICE** that Plaintiff Andrea L. Marion hereby files her First

Amended Complaint, pursuant to the Court's Order dated March 31, 2025, granting leave

to amend within forty-five (45) days.

     The attached First Amended Complaint supersedes the original complaint and

reflects:

- Updated factual allegations;

- Refined legal claims with supporting authority;

- Removal of Five Star Bank as a party following resolution;

- Revised damages, equitable relief, and case law-based tolling arguments.

     This Amended Complaint is respectfully submitted in good faith and in full

compliance with the Court's directive.

Dated this 13th  of April 2025

*Pro Se*

Andrea L. Marion
3201 Kenelworth Dr apt 5
East Point, GA 30344
dreabby7556@amfinancialservice.com
(716) 342-5798

NOTICE OF FILING FIRST AMENDED COMPLAINT - 2

**IN THE UNITED STATES DISTRICT COURT**

**FOR WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDREA L MARION,<br><br>       Plaintiff,<br><br>vs.<br><br>TRANSITOWNE JEEP CHRYSLER DODGE RAM OF WILLIAMSVILLE,<br><br>       Defendant | Case No.: 1:23-cv-00294-LJV<br><br><br>**FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025)** |

## I.  INTRODUCTION

Plaintiff Andrea L. Marion respectfully submits this First Amended Complaint against Transitowne Jeep Chrysler Dodge Ram of Williamsville (hereinafter "Transitowne"). This Amended Complaint is submitted pursuant to the Court's Order granting leave to amend. Plaintiff has taken this opportunity seriously and made good-faith, material improvements to the factual allegations, legal arguments, and damages analysis to ensure the record is complete and well supported. This amendment also reflects developments occurring since the original complaint, including the dismissal of Five Star Bank.

This First Amended Complaint expands the factual record, removes Five Star Bank as a party, and strengthens the legal basis for Plaintiff's claims against Transitowne, including violations of the Truth in Lending Act (TILA), consumer fraud, and common law torts. It further incorporates detailed allegations and supporting case law demonstrating why equitable tolling applies and why the claims are timely filed.

Plaintiff respectfully seeks the Court's permission to file the attached amended complaint, and for this case to proceed solely against Defendant Transitowne Jeep Chrysler Dodge Ram of Williamsville.

## II.    JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff brings claims under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., and pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

2.  Plaintiff resides in Georgia. Defendant Transitowne is located in New York.

3.  Venue is proper under 28 U.S.C. § 1391 because the acts and omissions giving rise to this Complaint occurred in this District.

## III.    PARTIES

4.  Plaintiff Andrea L. Marion is an individual consumer and resident of the State of Georgia. She brings this action pro se.

5.  Defendant Transitowne Jeep Chrysler Dodge Ram of Williamsville is a vehicle dealership located at 7408 Transit Road, Buffalo, New York 14221. Defendant regularly conducts business in Erie County, New York, and was involved in the financing and sale of Plaintiff's 2019 Jeep Grand Cherokee.

## IV.    FACTUAL ALLEGATIONS

6.  On or about August 7, 2020, Plaintiff entered into a vehicle finance agreement with Defendant Transitowne for the purchase of a 2019 Jeep Grand Cherokee.

7.  Plaintiff was provided a version of the contract missing required TILA disclosures, including but not limited to the number of payments, annual percentage rate (APR), and the finance charge box.

8.  Plaintiff was never provided written notice that a different version of the contract—with added signatures and terms—was submitted to a third-party financing bank (Five Star Bank).

9.  Plaintiff continued making monthly payments under the belief the contract terms were correct and valid.

10. In or around August 2022, Plaintiff noticed a tradeline from the financing bank (Five Star Bank) on her credit report showing inaccurate and inconsistent payment details, which prompted her to begin reviewing the transaction.

11. Plaintiff's credit report was showing the account was charged-off, but Plaintiff never received anything stating the account was closed or charged-off.

12. Plaintiff admits she fell behind on her payments to Five Star Bank due to financial hardship and loss of income at the time.

13. Plaintiff contacted Five Star Bank around August 2022 to confirm if the account was open and active and the representative she spoke with confirmed the account was open and active still.

14. Plaintiff was confused as to why her credit report stated otherwise so she requested documentation about the transaction from Five Star Bank to compare it to her credit report to ensure accuracy and completeness under the Fair Credit Reporting Act.

15. Five Star Bank provided documentation via mail on or about September 2022 and in these documents they provided Plaintiff's credit application, Retail Installment contract (hereinafter "RIC"), past due notices, balance and payment information, and the loan history.

16. Plaintiff reviewed these documents and noticed the Retail Installment Contract had additional signatures on it.

17. Plaintiff found her original documents Transitowne provided to her the day of the transaction and compared the Retail Installment Contract she had to Five Star Bank version.

18. Plaintiff then discovered that Transitowne had submitted a version of the agreement that contained different disclosures, added signatures, and unauthorized alterations.

19. On Plaintiff's RIC there was no Annual Percentage Rate being shown, no Number of Payments being shown, and the only signature on this RIC was Plaintiff's on Buyers line and then on the Seller lines was "TRANSITOWNE DCJ OF WMSVILLE".

20. Plaintiff had no reasonable way of knowing the documents differed or that they violated federal law until she conducted a thorough investigation on her own.

21. Additionally, Plaintiff paid a $5,000 down payment, as indicated on the RIC. However, the receipt provided only reflects $4,066.50, leaving a $933.50 discrepancy unaccounted for.

22. Plaintiff was never informed of this difference and was not given itemized documentation explaining how her full $5,000 was applied, further supporting the pattern of deceptive and non-transparent conduct by Defendant.

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 4

23. Between August 2020 and October 2022, Plaintiff made regular monthly payments of $590.

24. In January 2023, after repeated document requests to Transitowne and receiving no cooperation, Plaintiff had to rely on the contract from the bank and her original copy.

25. Plaintiff lives in GA and does not

26. Plaintiff filed this lawsuit in March 2023—within one year of discovering the concealed violations and altered documents.

27. After receiving and comparing the contracts in January 2023, Plaintiff initially believed the matter could be resolved through arbitration. Plaintiff located an arbitration clause on Five Star Bank's public website and, acting in good faith, assumed it applied to the transaction at issue.

28. Plaintiff pursued this belief and prepared to initiate arbitration. However, in a separate proceeding, Five Star Bank filed a state court action seeking to bar arbitration. The bank argued that the arbitration clause only applied to online services like checking and savings accounts—not auto financing.

29. Once Plaintiff realized she could not use arbitration to resolve the matter, she shifted her efforts to researching how to properly file in federal court. As a pro se litigant without legal counsel, this process took time, especially while balancing work responsibilities and parenting as a single mother.

30. Plaintiff resides in Georgia and lacked funds and support to immediately file her claim or mail documents. Once she confirmed federal court was the correct venue and saved enough to proceed, she filed the original complaint in March 2023—within one

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 5

year of discovering the violations and after making every reasonable effort to act
diligently.

31. Once Plaintiff understood her rights and was able to afford the cost of filing, she
promptly filed her complaint in March 2023—within a short time after discovery and
with diligence under the circumstances.

32. A side-by-side comparison of the contract Plaintiff received from Transitowne and
the version later obtained from Five Star Bank reveals material discrepancies,
including missing disclosures, different signature placements, and additional
notations on the bank's copy.

33. Plaintiff attaches both versions of the contract as exhibits to this Complaint:

- **Exhibit A** – Plaintiff's original contract received at the time of sale;

- **Exhibit B** – The altered version provided by the financing bank.

These documents form the basis for Plaintiff's claims under TILA, common law
fraud, and deceptive business practices.


## V.    <u>TIMELINE OF EVENTS</u>

34.

- **August 2020** – Plaintiff signs agreement with Transitowne.

- **2020–2022** – Plaintiff pays under the belief her contract is accurate.

- **Late 2022** – Plaintiff finds errors on her credit report.

- **September-October 2022**- Plaintiff requests and receives account level
documentation of the transaction.

- **October 2022-January 2023-** Plaintiff requests documentation from Transitowne and they refuse to provide.
- **January 2023 –** Plaintiff reviews both contract versions from bank and her original copy and identifies discrepancies.
- **January-February 2023 –** Plaintiff attempts arbitration; Five Star blocks it in state court.
- **March 2023 –** Plaintiff files in federal court after confirming arbitration is unavailable.

## VI.    <u>LEGAL BASIS FOR EQUITABLE TOLLING AND SUPPORTING CASE LAW</u>

35. Although TILA claims generally must be filed within one year under 15 U.S.C. § 1640(e), that statute is subject to equitable tolling in cases involving fraud, misrepresentation, concealment, or when the Plaintiff has no reason to discover the harm.

36. The United States Supreme Court in *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), held that "equity tolls the statute of limitations where the party injured by fraud remains in ignorance of it without any fault or want of diligence." This rule applies fully to federal claims such as those under TILA.

37. In *King v. California*, 784 F.2d 910 (9th Cir. 1986), the Ninth Circuit ruled that TILA's one-year statute of limitations does not begin until the plaintiff discovers the facts constituting the violation, especially when required disclosures are missing or obscured. There, the court reversed dismissal and allowed the case to proceed despite the statutory window passing.

38. In *Frazee v. Seaview Toyota*, 695 F. Supp. 1406 (D. Conn. 1988), the court allowed equitable tolling where the dealership had altered a retail installment contract and submitted a forged version to the lender. The court emphasized that the plaintiff, like here, had no way to detect the forgery until much later.

39. In *Ellis v. GMAC*, 160 F.3d 703 (11th Cir. 1998), the Eleventh Circuit allowed tolling where misleading and complex financial documents led the borrower to believe the loan terms were correct. Tolling applied because the violations were not evident until the plaintiff conducted further review.

40. In *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998), the court reaffirmed that equitable tolling applies across federal consumer statutes like TILA, even where the statutory language is strict, because the intent is to protect the consumer from unfair practices.

41. Similarly, in *In re Community Bank of Northern Virginia*, 622 F.3d 275 (3d Cir. 2010), the Third Circuit granted tolling in a class action involving deceptive loan terms and concealment of illegal charges. The court held that systemic concealment and delay by defendants justified tolling for claims that arose years earlier.

42. These decisions directly support Plaintiff's claims. Transitowne failed to provide complete disclosures, submitted a materially different version of the contract to the bank, and denied Plaintiff access to original documents. Plaintiff diligently investigated the matter after noticing errors in her credit report in late 2022 and filed suit within one year of discovery.

43. Under these well-established precedents, equitable tolling applies, and Plaintiff's claims are timely filed.

## VII.    DEFENDANT'S ATTEMPT TO EVADE LIABILITY THROUGH TECHNICALITY

44. Defendant Transitowne's argument that Plaintiff's claims are time-barred under the statute of limitations improperly seeks to avoid liability by exploiting a technicality—while ignoring their own role in concealing the violations.

45. In *Bailey v. Glover*, 88 U.S. 342 (1874), the Supreme Court clearly rejected this kind of defense, stating that the statute of limitations "does not begin to run until the fraud is discovered or could have been discovered with reasonable diligence." This ruling rejected the defense that the limitations period should start from the date of the fraud itself, especially when the fraud is concealed. The Court's decision was a landmark ruling, establishing the principle that the statute of limitations for fraud claims should be tolled (paused) until the plaintiff is aware of the fraud, or until they should have been aware with reasonable diligence.

46. Likewise, in *Holmberg and Ramadan*, federal courts made clear that defendants use the concealment of their wrongdoing to their advantage by benefiting from a delay in filing caused by their own actions. This principle ensures that defendants are not rewarded for hiding their wrongdoings, and that statutes of limitations do not begin to run until the plaintiff discovers the fraud or has reasonable knowledge of it.

47. In *In re Community Bank*, supra, the court rejected the argument that claims were untimely, stating that systemic deception in the lending process could not be protected by a statutory deadline where the harm was concealed.

48. Plaintiff acted promptly after discovering the contract discrepancies in late 2022, and then early 2023 following a failed attempt to resolve the matter through arbitration. Plaintiff's delay in filing was not due to neglect, but due to (**1**) pursuing arbitration in good faith, (**2**) logistical and financial hardship, and (**3**) lack of access to legal representation or complete documentation until early 2023.

49. To allow Defendant to hide behind a statute of limitations defense would reward fraudulent concealment and undermine the consumer protections afforded by TILA and similar statutes. The Court should find that tolling applies and allow this case to proceed on the merits.

**VIII.    PLAINTIFF CANNOT BE PENALIZED FOR LACK OF LEGAL KNOWLEDGE OR FOR RELYING ON DEFENDANT'S MISREPRESENTATIONS**

50. Defendant may assert that Plaintiff is at fault for not recognizing the missing or altered disclosures at the time she signed the contract. This argument fails both legally and factually. Plaintiff did not possess the legal training, expertise, or awareness to know that the documents she received were non-compliant with federal lending laws. She was not afforded a meaningful opportunity to review or compare the contract versions, and she had no reason to suspect fraud or deception.

51. TILA is a remedial consumer protection statute that places the burden of compliance squarely on the lender or dealer—not the borrower. As the Second Circuit held in Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973), the statute's entire purpose is to "assure a meaningful disclosure of credit terms so that the

consumer will be able to compare more readily the various credit terms available...
and avoid the uninformed use of credit."

52. In Ellis v. GMAC, 160 F.3d 703, 708 (11th Cir. 1998), the court expressly rejected
the notion that signing a contract amounts to knowledge of a TILA violation. There,
consumers signed misleading and complicated documents, but the court held:

> **"The fact that the plaintiffs signed the loan documents does not mean they
> had actual knowledge of the violations or the ability to discover them at the
> time of signing."**

53. Similarly, in King v. California, 784 F.2d 910 (9th Cir. 1986), the court held that the
limitations period begins only once the consumer has a "reasonable opportunity" to
discover the violation. In King, as in this case, the lender failed to make proper
disclosures, and the consumer's ignorance of the law did not negate their right to sue
after discovering the wrongdoing.

54. In Frazee v. Seaview Toyota, 695 F. Supp. 1406, 1409 (D. Conn. 1988), a dealership
submitted a forged contract to a bank while giving the consumer a clean version with
disclosures missing or altered. The court found equitable tolling applied and wrote:

> **"The responsibility to ensure compliance with TILA rests with the creditor,
> not the borrower."**

> **"The consumer cannot be expected to unearth fraudulent practices that were
> actively concealed."**

55. In Ramadan v. Chase Manhattan Corp., 156 F.3d 499 (3d Cir. 1998), the court
emphasized that equitable tolling applies broadly in federal consumer statutes and

that limitations periods cannot shield misconduct when the consumer only learns of the violation after diligent efforts.

56. Plaintiff in this case is not a legal professional. She relied on the documentation provided by Transitowne, which omitted key TILA-required disclosures. At no point was Plaintiff advised that she was not receiving a complete or compliant copy of the agreement.

57. Moreover, Transitowne submitted a different version of the contract to the financing institution, which contained disclosures and signatures that did not exist on Plaintiff's copy. Plaintiff could not possibly know about the alteration without gaining access to that document—which she did not receive until January 2023, after beginning an investigation due to a credit reporting error.

58. Plaintiff acted in full reliance on Defendant's apparent compliance. She reasonably assumed the documents she received were legitimate. Even after discovering the issue, Plaintiff sought arbitration based on a publicly available agreement, and only when that avenue was legally blocked did she research and prepare to file in federal court—without legal counsel, and despite personal hardships.

59. The argument that Plaintiff should have "done the math" or noticed missing boxes is incompatible with the legal structure of TILA, which places the entire burden of compliance on creditors and imposes strict liability for disclosure failures, regardless of whether the consumer was confused or unaware.

60. As stated in Rodriguez v. Banco Central, 727 F. Supp. 759, 771 (D.P.R. 1989), another TILA tolling case:

**"It would be unconscionable to penalize the borrower for not identifying a violation hidden by the lender's failure to disclose."**

61. The federal courts recognize that lay consumers cannot be expected to audit complex legal forms. What matters is whether the creditor provided the mandatory information in the manner required by law. In this case, Transitowne did not. Plaintiff's claims are thus timely, and equitable tolling applies with full force under well-established precedent.

## IX.    CLAIMS FOR RELIEF

### Count I – Violation of the Truth in Lending Act (TILA)

### (15 U.S.C. §§ 1601 et seq., specifically § 1638 and § 1640)

62. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint.

63. Under 15 U.S.C. § 1638(a), a creditor is required to make clear and accurate disclosures in writing regarding the finance charge, annual percentage rate, number of payments, total of payments, and the total sale price before a transaction is consummated.

64. Defendant Transitowne, as the original creditor or arranger of credit, failed to provide Plaintiff with a complete and accurate disclosure statement at the time of sale. The version of the retail installment contract provided to Plaintiff omitted essential

information required under TILA, including the number of payments, the APR, and the total finance charge. These omissions are violations of § 1638(a).

65. Furthermore, Defendant submitted a different version of the contract to a third-party financing institution which contained additional disclosures and forged or unauthorized signatures do not present on the version provided to Plaintiff.

66. These actions constitute material violations of TILA, and under 15 U.S.C. § 1640(a), Plaintiff is entitled to:

- Actual damages sustained as a result of the failure to disclose;

- Twice the amount of the finance charge in connection with the transaction (up to the limits in § 1640);

- Court costs and attorney's fees should Plaintiff retain counsel.

## Count II – Violation of New York General Business Law § 349

## (N.Y. Gen. Bus. Law § 349 – Deceptive Acts and Practices)

67. Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

68. Under GBL § 349, it is unlawful to engage in deceptive acts or practices in the conduct of any business, trade, or commerce in the State of New York.

69. Defendant, while operating as a business providing consumer financial services, engaged in a pattern of deceptive conduct toward Plaintiff, including but not limited to:

- Failing to provide accurate disclosures;

- Providing Plaintiff with an incomplete and materially different version of the contract;

- Submitting a forged or altered version of the agreement to the financing bank;

- Refusing to respond to Plaintiff's document requests after discovery of the discrepancy.

70. These acts were consumer-oriented, affected the public at large, and were likely to mislead a reasonable consumer in the same situation as Plaintiff.

71. Plaintiff suffered actual damages, including monetary loss, confusion about her obligations under the loan, harm to her credit, emotional distress, and the costs associated with uncovering and addressing the misconduct.

72. Plaintiff is entitled to relief under GBL § 349, including actual damages, statutory damages of $50 to $1,000, injunctive relief, attorney's fees, and punitive damages due to the willful nature of Defendant's conduct.

### Count III – Common Law Fraud

73. Plaintiff realleges and incorporates all prior paragraphs.

74. Defendant intentionally engaged in fraudulent conduct by submitting a materially altered version of the contract to a financing institution and failing to disclose the discrepancies to Plaintiff.

75. The essential elements of fraud under New York law include:

(1) A material false representation or omission;

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 15

(**2**) Made with knowledge of its falsity;

(**3**) With intent to induce reliance;

(**4**) Justifiable reliance by the plaintiff; and

(**5**) Resulting damage.

76. Defendant knowingly submitted a forged and altered contract, withheld required disclosures, and misrepresented the amount of Plaintiff's down payment. The RIC states $5,000, but only $4,066.50 was acknowledged on the receipt, further demonstrating intentional misrepresentation.

77. Defendant falsely represented that the agreement Plaintiff signed was complete and valid under the law, while knowingly concealing material differences and forged signatures on the version submitted to the bank.

78. Plaintiff justifiably relied on the documents provided to her at the time of sale, had no reason to believe they were altered, and suffered damages as a direct result of this misrepresentation.

79. Defendant's fraud was willful, malicious, and designed to benefit financially at Plaintiff's expense. Plaintiff is therefore entitled to compensatory damages, punitive damages, and any other relief the Court deems just.

## **Count IV – Breach of Fiduciary Duty**

80. Plaintiff realleges and incorporates all prior paragraphs.

81. While generally a car dealership may not owe fiduciary duties in every transaction, Defendant undertook a role beyond a typical arms-length seller by arranging credit

financing, submitting contracts on Plaintiff's behalf, and acting as an intermediary between Plaintiff and the financing institution.

82. Defendant assumed a position of trust and reliance, creating a duty to act honestly, transparently, and in good faith.

83. Defendant breached this duty by:

- Failing to disclose that it was submitting a different version of the agreement;

- Forging or inserting unauthorized signatures;

- Withholding documentation upon Plaintiff's request;

- Misleading Plaintiff regarding the nature and terms of her contract.

84. As a result, Plaintiff suffered harm that includes payment obligations under a loan she never agreed to, emotional distress, credit damage, and financial loss.

85. Plaintiff seeks equitable and monetary relief, including disgorgement of ill-gotten gains, punitive damages, and any other appropriate remedies.

## X.  DAMAGES

86. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered significant harm, including but not limited to:

### A. Actual Damages

87. Plaintiff suffered actual damages in the form of:

- Financial losses tied to monthly payments made under a misrepresented contract;

- Lost opportunities to seek better or alternative financing terms;

- Expenses incurred during her investigation (postage, notarizations, legal research, travel costs and document retrieval);

- Loss of time and productivity due to the need to investigate Defendant's wrongdoing;

- Damage to her creditworthiness and credit score due to inaccurate or incomplete loan terms being reported;

- Emotional distress and mental anguish from learning that the contract was altered without her knowledge and facing financial pressure from a misrepresented obligation.

**Estimated actual damages exceed $15,000, inclusive of lost money, harm to credit, and associated costs.**

### B. Statutory Damages – TILA

88. Under 15 U.S.C. § 1640(a), Plaintiff is entitled to statutory damages, including:

- Twice the amount of the finance charge imposed on the contract;

- Up to $5,000 in statutory damages for disclosure failures, forged documentation, and unauthorized submissions.

89. The finance charge associated with the subject transaction was $11,201.25.

**Accordingly, Plaintiff is entitled to statutory damages of $22,402.50 under federal law.**

### C. Statutory Damages – NY GBL § 349

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 18

90. In addition to actual damages, Plaintiff seeks statutory relief under New York General Business Law § 349, including:

- An award of up to $1,000 in statutory damages, and
- Attorney's fees and costs should counsel be retained, pursuant to GBL § 349(h).

### D. Punitive Damages

91. Defendant's conduct was not merely negligent—it was knowing, intentional, fraudulent, and malicious. Transitowne knowingly provided Plaintiff with a materially altered agreement, forged or submitted unauthorized signatures to a lender, withheld critical documentation upon request, and created long-lasting financial harm.

92. The pattern of concealment and refusal to assist Plaintiff after discovery further supports an award of punitive damages to punish and deter future misconduct.

**Plaintiff requests punitive damages in an amount not less than $50,000, subject to determination by the trier of fact.**

### E. Equitable Relief

93. Plaintiff requests equitable relief from this Court based on the fraudulent nature of the contract and Defendant's unlawful conduct, which rendered the retail installment agreement void or voidable.

94. Specifically, Plaintiff seeks:

a. Full restitution in the amount of $20,930, representing:

- $15,930 in payments made over 27 months at $590 per month under a fraudulent contract, and

- $5,000 paid as a down payment at the time of vehicle purchase.

**This relief is appropriate due to Defendant's material misrepresentations, concealment of required TILA disclosures, and submission of altered contract documents**.

b. A declaratory judgment that the retail installment agreement provided to Plaintiff was not in compliance with the Truth in Lending Act, was materially altered, and is therefore unenforceable.

c. Any additional equitable relief the Court deems necessary to make Plaintiff whole, including:

- An order barring Defendant from using the altered version of the agreement in any future legal action;

- Any restitution or injunctive relief available under the Court's equitable powers to correct the ongoing consequences of Defendant's misconduct.

## XI.    **PRAYER FOR RELIEF**

95. **WHEREFORE**, Plaintiff Andrea L. Marion respectfully requests that this Court enter judgment in her favor and award the following relief against Defendant Transitowne Jeep Chrysler Dodge Ram of Williamsville:

1. Actual damages for payments made under a fraudulent contract, including restitution of all monthly payments and the down payment;

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 20

2. Statutory damages under the Truth in Lending Act (TILA), including twice the finance charge pursuant to 15 U.S.C. § 1640(a);

3. Statutory damages under New York GBL § 349, including:

4. Punitive damages for Defendant's willful, knowing, and malicious conduct;

5. Equitable relief, including but not limited to:

   • Restitution of all amounts paid under the fraudulent contract;

   • A declaratory judgment that the contract was noncompliant and voidable due to missing disclosures and material alterations;

   • An order preventing Defendant from enforcing or relying on the altered contract in future actions;

   • Any other equitable relief the Court deems just and proper;

6. Costs of this action and any reasonable attorney's fees Plaintiff may incur if counsel is retained;

7. Any such other relief as the Court may find just, equitable, and proper.


## Plaintiff's Good Faith and Diligent Efforts

96. Plaintiff has acted at all times in good faith and with diligence upon discovering the violations. As a consumer without formal legal training, Plaintiff made every reasonable effort to resolve the issue—first by attempting arbitration, then by conducting her own research to bring this case before the Court. This Amended Complaint reflects not only Plaintiff's lived experience and documented harm, but also her sincere commitment to seeking redress through proper legal channels.

97. The Truth in Lending Act was enacted to prevent the very type of concealment, misrepresentation, and lender-dealer manipulation that occurred in this case. Courts have consistently held that where disclosures are incomplete or altered, and the consumer acts in diligence, relief must be available under the statute. Plaintiff brings this claim not only to remedy personal harm, but to uphold the integrity of consumer protection law.

## CONCLUSION

Plaintiff has presented a well-pleaded and factually supported Complaint that demonstrates Defendant's violations of federal and state law, including fraudulent conduct, failure to disclose material terms, and submission of altered documentation in violation of TILA and New York consumer protection statutes. Equitable tolling applies, and Plaintiff acted diligently once the violations were discovered. To deny this claim on a technicality would reward deceptive conduct and deprive a diligent consumer of her right to be heard. Plaintiff respectfully asks the Court to allow this matter to proceed so that the merits may be addressed.

For all the reasons set forth herein, Plaintiff respectfully requests that this Court deny any motion to dismiss and permit this case to proceed to discovery and trial so that the full extent of Defendant's unlawful conduct may be exposed and redressed.

Dated this 13th of April 2025

_____
Pro Se

Andrea L. Marion
3201 Kenelworth Dr apt 5
East Point, GA 30344
dreabby7556@amfinancialservice.com
(716) 342-5798

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 23

## CERTIFICATE OF SERVICE

I, Andrea L. Marion, hereby certify that on this 13th day of April 2025, I served a true and correct copy of the following documents:

- First Amended Complaint

- Motion for Leave to File First Amended Complaint (if required)

- Certificate of Service

upon the attorney of record for Defendant, Transitowne Jeep Chrysler Dodge Ram of Williamsville, via email to:

Ryan P. Cummings, Esq.
Barclay Damon LLP
The Avant Building
200 Delaware Avenue
Buffalo, NY 14202
Email: rcummings@barclaydamon.com


Dated this 13th of April 2025

_Andrea L. Marion_ (signature)

*Pro Se*

Andrea L. Marion
3201 Kenelworth Dr apt 5
East Point, GA 30344
dreabby7556@amfinancialservice.com
(716) 342-5798

FIRST AMENDED COMPLAINT (FILED PURSUANT TO COURT'S ORDER DATED MARCH 31, 2025) - 24

## Exhibit A – Side-by-Side Comparison of Retail Installment Contract (RIC)

| **Plaintiff's Original Contract** | **Five Star Bank's Submitted Contract** |
| --- | --- |
| **Missing number of payments** | Shows 84 payments |
| Finance charge: $11,201.25 | Finance charge: $11,201.25 |
| **No dealer signature** | Includes Transitowne signature |
| **No notary or date stamp** | Shows notarized signature and date |
| **No APR listed** | APR: 7.49% listed |
| Total of Payments: $49,560 | Total of Payments: $49,560 |
| No borrower initials at bottom | Bank copy shows initials not present before |

The comparison above demonstrates that the version of the Retail Installment Contract (RIC) provided to Plaintiff was incomplete and failed to include key disclosures required under 15 U.S.C. § 1638. In contrast, the version submitted to Five Star Bank includes additional terms, fields, and signatures that Plaintiff had no knowledge of at the time of signing. This supports Plaintiff's claims of concealment, fraud, and the need for equitable tolling.

# EXHIBIT

# A

# RETAIL INSTALMENT CONTRACT

Meaning Of Some Words: In this Contract, the words "I," "me," "we," and "my" mean anyone signing this Contract as a Buyer. Th words "you" and "your" mean the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. | Total Sale Price The total cost of my purchase on credit, including my downpayment |
|---|---|---|---|---|
| 15 USC 1605 % | 14 CFR 433.1 $ | $ | $ | of $ |

*never was disclosed violation*

My Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| $ | | Monthly, beginning |

e means estimate

Security: I am giving a security interest in the motor vehicle being purchased.
Filing Fees: $
Late Charge: If a payment is late more than 10 days, I will be charged 10% of the payment.
Prepayment: If I pay off early, I will not have to pay a penalty.

My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

*name incorrect*

In this Contract, you are the Seller.

Name ___ Address ___ Zip Code ___

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract.

We are the Buyer(s).

Name(s) ___ Address ___ Zip Code ___

If there is more than one Buyer, each of us will be obligated separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

Description of Vehicle: (See Insurance Requirements section)

Acct. No. ___
Date ___

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|

Equipped with ___ A.T. ___ P.S. ___ AM-FM Radio ___ Other
___ A.C. ___ P.B. ___ P.W.

I have traded in the following vehicle: ___ Year and Make ___ Description

### Itemization of Amount Financed

Cash Price $
Cash Downpayment —$
Trade-In
Value of Trade-In —$
Lien Payoff to: —$
Unpaid Cash Price Balance
1. +$
To Credit Insurance Company * 2. +$
To Property Insurance Company * 3. +$
To Public Officials 4. +$
To GAP Insurance Co. 5. +$
To 6. +$
To 7. +$
Amount Financed
(1 thru 7)=$

Property Insurance: I am required to obtain and maintain insurance on the Vehicle, endorsed to protect you as loss-payee, BUT I MAY CHOOSE THE AGENT OR BROKER OF MY CHOICE.
TITLE HOLDER OF COLLATERAL: ___ REGISTRANT: ___
PHYSICAL DAMAGE: Comprehensive $ ___ deductible. Collision $ ___ deductible.
INSURANCE COMPANY: ___ Policy Number: ___ Effective Date ___
AGENT: Name ___ Address ___ Telephone Number: ___
I guarantee that the required insurance coverage as shown in the Insurance Requirements section was obtained from the agent named above.
**Liability insurance coverage for bodily injury and property damage is not included or provided for in this Contract.**

Vendor's Single Interest Insurance: If this box is checked ☐, you require Vendor's Single Interest Insurance. I may choose the person through whom Vendor's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Assignee and my interest is not covered. If obtained through you, the cost of such insurance is $ ___

Promise to Pay: I promise to pay to you (the "Assignee") the Total Sale Price for the Vehicle by making the Cash Downpayment, assigning the Trade-In, if shown above, on or before the date of this Contract, and paying you the Amount Financed plus the finance service charge (called "interest" in this Contract) at the Annual Percentage Rate shown above. I promise to make payments on or before the payment due dates shown above.

*You may be retaining a portion of these amounts

## FIVE STAR BANK, WARSAW, NY 14569

(the "Assignee")

### REQUEST AND SCHEDULE OF GROUP INSURANCE

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage.
If I choose to become insured, I understand that insurance will be provided in accordance with the certificate of group insurance that will be given to me. I also reserve the right to terminate my coverage at any time by notifying you in writing. The cost of insurance for the entire term of this Contract is shown below.

___ I WANT optional Group Credit Life Insurance. $ ___
___ WE WANT optional Group Credit Joint Life Insurance. $ ___
___ I WANT optional Group Credit Accident and Health Insurance. $ ___

Insured Buyer's present age ___
Insured Co-Buyer's present age ___

Signature of Buyer ___
Signature of Co-Buyer (for Joint Life only) ___
Insurer: ___
Max. Amt. of Ins.: ___

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side.)

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

NOTICE TO THE BUYER: 1. Do not sign this Agreement before

shown above.

## FIVE STAR BANK, WARSAW, NY 14569

(the "Assignee")

**REQUEST AND SCHEDULE OF GROUP INSURANCE**

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage. If I choose to become insured, I understand that insurance will be provided in accordance with the certificate of group insurance that will be given to me. I also reserve the right to terminate my coverage at any time by notifying you in writing. The cost of insurance for the entire term of this Contract is shown below.

| | 6    +$ | * |
| To | | |
| | 7    +$ | * |
| Amount Financed | | |
| (1 thru 7)=$ | | |

*You may be retaining a portion of these amounts.

— I WANT optional Group Credit Life Insurance.
— WE WANT optional Group Credit Joint Life Insurance.          $ _____
— I WANT optional Group Credit Accident and Health Insurance.   $ _____
                                                                 $ _____

Insured Buyer's present age _____
Insured Co-Buyer's present age _____

Signature of Buyer _____

Signature of Co-Buyer (for Joint Life only) _____

Buyer: _____     Max. Amt. of Ins.: _____

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side.)

The **Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

NOTICE TO THE BUYER: 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

Seller agrees to this Contract, including terms and conditions on back, and assigns it to the Assignee in accordance with the first Assignment printed on the reverse side, unless otherwise marked.

I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER. RETAIL INSTALMENT CONTRACT.

Seller _____
(Firm Name)

Buyer _____

Buyer _____

Anyone signing below is obligated only under the terms of the security agreement and is not personally responsible under the terms of the Contract.

Signature _____     Address _____     Date _____

## CO-SIGNER NOTICE

I agree to pay the debt identified above, although I may not personally receive any property, services or money. I may be sued for payment, even though the person who receives the property, services or money is capable of paying the debt. I should know that the Total of Payments listed above does not include Finance Charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that are stated in the Contract. I will also have to pay some or all of these costs and charges as required by the terms of the Contract. This notice is not the writing that obligates me to pay the debt. If the debt is ever in default, that fact may become a part of my credit report. I have read the Retail Instalment Contract, which contains the exact terms of my obligation, and the Co-Signer(s) Notice. I have been given a completed copy of this Notice and each writing that obligates me or the Buyer on this Contract.

Co-Signer's Signature _____     Date _____     Co-Signer's Signature _____     Date _____

CO-SIGNER: I SHOULD READ THE NOTICE TO CO-SIGNER, ABOVE, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.
CO-SIGNER'S AGREEMENT: I, the person (or persons) signing below as "Co-Signer", promise to pay to you all sums due on this Contract and to perform all agreements in this Contract. I intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. I am making this promise to induce you to make this Contract with the Buyer, even though you will use the proceeds only for the Buyer's benefit. I agree to pay even though you may not have made any prior demand for payment on the Buyer or exercised your security interest. I also acknowledge receiving a completed copy of this Contract.

Co-Signer's Signature _____     Address _____     Date _____

Co-Signer's Signature _____     Address _____     Date _____

CONSUMER FORM NY 23-SLC-26  11/1/2005  Customized  12-08     NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

ORIGINAL - White • BUYER'S COPY - Canary • CO-SIGNER'S COPY - Pink • BANK FILE COPY - Goldenrod • DEALER'S COPY - White

© 2005 BANCONSUMER SERVICE, INC.

**RETAIL INSTALLMENT CONTRACT**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all scheduled payments. | The total cost of your purchase on credit, including your downpayment of $ |

My Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|

My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

Security: I am giving a security interest in the motor vehicle being purchased.

Filing Fees: $ _____

Late Charge: If a payment is late more than 10 days, I will be charged 10% of the payment.

Prepayment: If I pay off early, I will not have to pay a penalty.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Buyer intends to assign this Contract.

If there is more than one Buyer, each of us will be obligated separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

*Description of Vehicle: (See Insurance Requirements section)*

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|

**Itemization of Amount Financed**

FIVE STAR BANK, WARSAW, NY 14569                    (the "Assignee")

**REQUEST AND SCHEDULE OF GROUP INSURANCE**

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage.

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side)

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

NOTICE TO THE BUYER: 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER.

RETAIL INSTALLMENT CONTRACT.

Buyer _____

Buyer _____

l0o2Af25701y3X10e84Fa0Ll6Ds10h0Pa1h435V

ANDREA L MARION                          442016349
155 A GARDEN VILLAGE DR
BUFFALO, NY 14227                        8/07/20 17:04

                                            4066.50

Payment Received:
    D CREDIT CARD Approval Number 00771R          120.50
    Cash                                         3946.00
                              Total Received:    4066.50

Payment Applied To: COD/REG—MARION, ANDREA L
    D-21503 . D8729P : D8729P                      66.50
    D-11100 . D8729P : D8729P                    4000.00
                              Total Applied.      4066.50

*Where's $933.50?*
*down payment was $5,000?*

CARDHOLDER COPY
THANK YOU

SIGNATURE
X

TO CARD ISSUER AGREEMENT
TOTAL AMOUNT ACCORDING
I AGREE TO PAY THE ABOVE

TC 8859E692D698E6F294

TRAN ID:        1044684341
HOST:           0/00
APPROVAL CODE:  00771R
CREDIT PURCHASE:        120.50
ENTRY:          ContactLess
CARD:           DISCOVER
ACCT#:          XXXXXXXXXXXXXX3409
REF #:          TR1*SPLIT032
CLERK:          1000
MERCH LOC CODE:         TR1

A000001523010
Discover Credit

August 07, 2020 05:03:40
Phone# (716) 632-6900
Williamsville, NY 14221
7428 Transit Rd
TRANSITOWNE MITSUBISHI

# EXHIBIT

# B

**RETAIL INSTALMENT CONTRACT**

Meaning of Some Words: In this Contract, the words "I," "me" and "my" mean anyone signing this Contract as a Buyer. The words "you," "your" and "your" mean the Seller or, after the Seller transfers of rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. | Total Sale Price The total cost of my purchase on credit, including my down payment |
|---|---|---|---|---|
| 7.49 % | $ 11,201.25 | $ 36,350.75 | $ 49,560.00 | of $ 5,000.00 $ 54,560.00 |

My Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 04 | $ 590.00 | Monthly, beginning 09/21/2020 |

Security: I am giving a security interest in the motor vehicle being purchased.

Filing Fees: $ N/A
Late Charge: If a payment is late more than 10 days, I will be charged 10% of the payment.
Prepayment: If I pay off early, I will not have to pay a penalty.

My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract,
you are
the Seller.  TRANSITOWNE DCJ OF WMSVILLE  7400 Transit Rd  Williamsville, NY 14221
Name  Address  Zip Code

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract.

We are
the Buyer(s).  ANDREA L MARION  165 A GARDEN VILLAGE DR  BUFFALO, NY 14227
Name(s)  Address  Zip Code

If there is more than one Buyer, each of us will be obligated, separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

Description of Vehicle: (See Insurance Requirements section)

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| U | 2019 JEEP GRAND CHEROKEE | SUDN | G | | | 1C4RJFBG0KC796733 |

Equipped — A.T.  P.S.  AM-FM Radio  Other ___
with — A.C.  P.B.  P.W.
I have traded in
the following vehicle: N/A  N/A
Year and Make  Description

Acct. No. ___
Date 08/07/2020

**Itemization of Amount Financed**
Cash Price  $ 36,495.00
Cash Downpayment  −$ 5,000.00
Trade-In
Value of Trade-in  −$ N/A
Lien Payoff for N/A  −$ N/A
  +$ N/A
Unpaid Cash Price Balance  =$ 31,495.00

Property Insurance: I am required to obtain and maintain insurance on the Vehicle, endorsed to protect you as loss-payee, BUT I MAY CHOOSE THE AGENT OR BROKER OF MY CHOICE.
TITLE HOLDER OF COLLATERAL: ANDREA L MARION  REGISTRANT: ANDREA L MARION
PHYSICAL DAMAGE: Comprehensive $ N/A  deductible, Collision $ N/A  deductible.
INSURANCE COMPANY: PROGRESSIVE  Policy Number:  Effective Date 08/07/2020
AGENT: Name N/A  Address 6300 WILSON MILLS RD  Telephone Number:
I guarantee that the required insurance coverage as shown in the Insurance Requirements section was obtained from the agent named above.
Liability Insurance coverage for bodily injury and property damage is not included or provided for in this Contract.

Vendor's Single Interest Insurance: If this box is checked ☐, you acquire Vendor's Single Interest Insurance. I may choose the person through whom Vendor's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Assignee and my interest is not covered. If obtained through you, the cost of such insurance is $ 95.00

Promise to Pay: I promise to pay to you (the "Assignee") the Total Sale Price for the Vehicle by making the Cash Downpayment, assigning the Trade-in, if shown above, on or before the date of this Contract, and paying you the Amount Financed plus the credit service charged (called "interest" in this Contract) at the Annual Percentage Rate shown above. I promise to make payments on or before the payment due dates shown above.

**FIVE STAR BANK, WARSAW, NY 14569**  (the "Assignee")

To Credit Insurance Company * ___
  +$ N/A
To Property Insurance Company * ___
  +$ N/A
To Public Officials ___
  +$ 3,461.04
To GAP Insurance Co. ___
  +$ 395.00
To VSI ___
  +$ 95.00
To SERVICE CONTRACT * ___
  +$ 2,912.71
Amount Financed (I thru P) =$ 36,350.75
*You may be retained a portion of these amounts.

REQUEST AND SCHEDULE OF GROUP INSURANCE

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage. If I choose to become insured, I understand that insurance will be provided in accordance with the certificate of group insurance that will be given to me. I also reserve the right to terminate my coverage at any time by notifying you in writing. The cost of insurance for the entire term of this Contract is shown below.

___ I WANT optional Group Credit Life Insurance.  $ N/A  Insured Buyer's present age ___
___ WE WANT optional Group Credit Joint Life Insurance.  $ N/A  Insured Co-Buyer's present age ___
___ I WANT optional Group Credit Accident and Health Insurance.  $ N/A

Signature of Buyer ___  Signature of Co-Buyer (for Joint Life only) ___

Insurer: ___  Max. Amt. of Ins. ___

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side)

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO THE BUYER:** 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

Seller agrees to this Contract, including terms and conditions on back, and assigns it to the Assignee in accordance with the first Assignment printed on the reverse side, unless otherwise marked.

I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER. RETAIL INSTALMENT CONTRACT.

Seller TRANSITOWNE DCJ OF WMSVILLE  Buyer X Andrea Marion
Signature ___  Buyer X ___

Anyone signing below is obligated only under the terms of the security agreement and is not personally responsible for the payment of the debt.

Signature ___  Address ___  Zip ___

NOTARY PUBLIC, STATE OF NEW YORK
No. 01HE6273___
Qualified in Erie County ___
My Commission Expires 02-04-20___

**CO-SIGNER NOTICE**

I agree to pay the debt identified above, although I may not personally receive any property, services or money. I may be sued for payment, although the person who receives the property, services or money is capable of paying the debt. I should know that the Total of Payments listed above does not include Finance Charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that are stated in the Contract. I also have to pay some or all of these costs and charges as required by the terms of the Contract. This notice is not the writing that obligates me to pay the debt. If the debt is in default, that fact may become a part of my credit report. I have read the Retail Instalment Contract, which contains the exact terms of my obligation, and the Co-Signer's Notice.

I have been given a completed copy of this Notice and the Contract that obligates me or the Buyer on this Contract.

Co-Signer's Signature ___  Date 08/07/2020  ___ Date 08/07/2020

CO-SIGNER: I SHOULD READ THE NOTICE TO CO-SIGNER, ABOVE, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.
CO-SIGNER'S AGREEMENT: I, (the person (or persons) signing below as "Co-Signer," promise to pay to you all sums due on this Contract and to perform all agreements in this Contract. I intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. I am making this promise to induce you to make this Contract with the Buyer, even though you will use the proceeds only for the Buyer's benefit. I agree to pay even though you may not have made any prior demand for payment on the Buyer or exercised your security interest. I also acknowledge receiving a completed copy of this Contract.

X ___
Co-Signer's Signature  Address  Date 08/07/2020
X ___
Co-Signer's Signature  Address  Date 08/07/2020

BANKFORMS FORM NO 13 ISO-24 10/1/2000  OnlineCard  12-04  NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

ORIGINAL - Bank • BUYER'S COPY - Canary • CO-SIGNER'S COPY - Pink • BANK FILE COPY - Goldenrod • DEALER'S COPY - White  © 2005 BANKGRAPHICS SERVICE, INC.

Case 1:23-cv-00294-LJV     Document 1     Filed 05/31/23     Page 30 of 146

**Security Agreement:** As security for this Contract (to protect you if I don't pay), I give you a security interest in the Vehicle being purchased. A security interest means that, if one of the events of default occurs, you can take the Vehicle and use it under circumstances set out as is more fully explained in the Right to Demand Payment in Full and the Right to Repossess sections on the back of this Contract. "Vehicle" shall include tires, parts, equipment, replacement parts or additions to the Vehicle or any vehicle insurance rebates or any proceeds resulting from now or damage to the Vehicle. If I default (see Right to Demand Payment in Full section), you have the right to apply any sums that I have on deposit with you and any group insurance refunds which you receive against any balance that I owe. The Vehicle also secures any advances made to protect your interest in the Vehicle.

**How The Finance Charge Is Figured:** The Finance Charge, which consists only of interest, has been computed upon the basis that I will pay all installments on the scheduled due dates. If any installment is received later than the scheduled due date, I will be obligated to pay such additional amounts as may become payable by reason of the accrual of interest calculated daily upon the unpaid balance of the Amount Financed, in the event that any installment is made in advance of the scheduled due date, the interest charges will be reduced accordingly. The amount of this decrease or increase will be reflected in the final payment. I shall have the right to prepay the unpaid principal balance in full or in part at any time provided that payments are first applied to accrued interest as of the date of prepayment.

**How Payment In Advance Of Credit Insurance Is Figured:** If I pay all amounts owing under this Contract in advance, I will receive a refund for Group Credit Insurance premiums from you calculated by a formula approved by the Insurance Department, as specified on the front of this Contract.

**Late Charge:** If I fail to pay any installment for more than 10 days from the date it is due, I will pay a late charge of 10% of the unpaid installment.

**Return Check Charge:** If any check, draft or other item I send you in payment of my obligation on this Contract is returned for insufficient funds, I agree to pay you a Return Check Charge of $20.00.

**Collection Costs:** If you retain an attorney to bring a lawsuit to collect any amount owing under this Contract, I will pay you attorneys' fees up to 15% of the amount then due, plus court costs, or such lesser amounts as the court allows.

**Payment After All Amounts Owing Become Immediately Due:** Under certain circumstances, you can declare all amounts owing under this Contract immediately due. If you do and all amounts owing are paid or you sue for them and obtain a judgment, you will calculate what I owe as if I were going to pay in advance.

**Care of Vehicle:** I agree: to keep the Vehicle in good condition and repair; not to sell or transfer it or use it as collateral in another transaction; not to use the Vehicle for hire, lease or permit its use in any illegal manner; not to allow someone else to seize the Vehicle or create a lien (claim) on it; and to give you immediate written notice of loss, theft or damage to the Vehicle.

**Insurance Requirements:** I agree at all times to keep the Vehicle insured with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to you, endorsed to protect you with a licensed insurance company. If I fail to insure my Vehicle, you may do so and I agree to pay the cost. I agree that any insurance moneys payable by reason of theft, damage to or loss of the Vehicle shall be paid directly and solely to you and may be used to pay my debt to you. If the Vehicle is lost or damaged, you can use the insurance proceeds (money) to replace or repair it, or to repay any amounts I owe you, and I agree that, if necessary, you can settle any insurance claims or sign any insurance checks on my behalf. I agree that loss, theft or damage to the Vehicle shall not affect its duty to make the payments under this Contract.

**Further Advances Secured:** If I fail to pay fees, taxes or the costs necessary to keep the Vehicle in good condition and repair, you may, if you alone choose, advance any sums necessary to protect your interest in the Vehicle. Any such advances will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract.

If I fail to maintain required property insurance, you may, if you choose, obtain equivalent kinds of replacement insurance. **THE INSURANCE YOU PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE ME LESS COVERAGE THAN INSURANCE I COULD PURCHASE MYSELF.** This replacement insurance will protect your interest, nor cover any obligation to obtain replacement insurance which will also protect my interests. Any amount you advance will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract. At the time of the advance, I will be notified in writing of my options to repay the advance:

(i) in full within ten days of the notice;
(ii) along with my monthly payment during the term of the insurance or for the remaining term of the Contract as you may decide;
(iii) if available, in a single monthly payment, one month following payment of all other amounts due under the Contract;
(iv) if available, in additional monthly payments, not exceeding the monthly payments due under the Contract;
(v) if available, any other amortization plan acceptable to you.

Your payments on my behalf will not cure my failure to perform my promises in this Contract.

**Optional Insurance or Service Contracts:** This Contract may contain charges for optional insurance or service contracts. If the Vehicle is repossessed, I agree that you may claim benefits under these contracts and terminate them to obtain refunds for unearned charges.

**Right to Demand Payment in Full:** Upon the following Events of Default, you can require that the entire balance of my loan be paid at once, without prior notice or demand, if:
1. Any amount owing under this Contract or any other amount I owe you now or in the future is not paid by the day it becomes due; or
2. I break one of my promises under this Contract; or
3. I have made any false or misleading statement on this Contract and/or credit application; or
4. Your name does not appear as the only "lienholder" (claim) on any certificate of title issued now or in the future; or
5. The Vehicle is lost or damaged without adequate insurance coverage; or sold, or given away, or seized; or
6. I file bankruptcy or if any proceeding is instituted to seek relief from my debts; or
7. I die or become legally unable to manage my affairs; or
8. You, in good faith, believe that the prospects of payment of our performance under this Contract is impaired; or
9. The Vehicle is seized by a third party (attaching, without limitation, a municipality or other governmental or quasi-governmental entity) because of the Vehicle's alleged or actual involvement in actual or alleged criminal or unlawful activity and/or where a forfeiture proceeding has been instituted in/before any federal, state or local court or any administrative body.

**Right to Repossess:** You can repossess (take) the Vehicle if one of the Events of Default (listed in the "Right to Demand Payment in Full" section) occurs. After you repossess the Vehicle, upon your request, or you can enter the premises where it is kept and take it yourself (as permitted by law), and you need not notify me before you do this. You can deducting your reasonable repossession, storage, repair, preparation for sale and selling expenses. You will send me reasonable notice by mail of any sale of the Vehicle. If the sale of my Vehicle even after you repossess it, if I make timely tender of the amount required to redeem the Vehicle.

To recover any articles I claim are not part of the Vehicle but were contained in the Vehicle, I must notify you in writing within 10 days after repossession. Failure to claim and take possession of these items promptly will be an abandonment of them.

If the sale does not cover all that I owe, I will be responsible for the amount still owed. If there is any surplus money, it will be refunded to me.

**Trade-In and Downpayment:** I guarantee that I own the vehicle traded in, if any, and that it is free from any lien or security interest not shown in the "Trade-In" section of the "Itemization of Amount Financed." I also represent that I have made the downpayment and have not borrowed it.

**Title and Security Interest:** If the Vehicle is already titled or is to be titled, I guarantee that I am or will be the registered owner and your security interest shall appear as the only security on any certificate of title now or in the future issued. I agree that you shall apply for certificate of title to show your security interest and I agree to assist you in doing so. I also grant you permission to file a financing statement (notice of your security interest filed for public record) covering my security interest without my signature on it.

**Waivers and Releases:** You can waive or delay enforcing any of your rights without losing them. You can waive or delay enforcing a right as to one of us without waiving it as to the other. You need not give anyone notice of the waiver, delay or release. Your failure to file a security interest, failure to keep the Vehicle insured, release of a security interest or granting extensions of time of payment shall not affect my obligation under this Contract.

**Assignee:** If the Assignee assigns the Contract to a subsequent Assignee, the term also refers to such subsequent Assignee. After the assignment, all rights and benefits of the Seller in this Contract are in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify me when and if Seller makes an assignment.

**Applicable Law:** This Contract shall be governed by New York Law except for its conflict of law provisions. If any provision is found to be ineffective under any law or regulation, the remainder will still be binding and effective.

(The following notice shall not apply to any sale for other than personal, family, or household use)

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Warranties and Representations:** I warrant and represent that the funds (Collateral) are obtained and will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and I will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted. I agree to promptly inform you of any proposed proceedings or actual proceeding which would subject the funds (Collateral) to forfeiture to any governmental body.

**WARRANTIES:** If this Contract involves the sale of a new Vehicle, the Seller makes no warranty, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, unless Seller has given Buyer a separate written warranty or service contract with Buyer within 90 days from the date of this Contract, or except for any warranty set forth in the Buyer's Guide for Used Cars.

IF THIS CONTRACT INVOLVES THE SALE OF A USED VEHICLE, AS DEFINED UNDER 16 CFR PART 455, THE INFORMATION I SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

## ASSIGNMENT

FOR VALUE RECEIVED, receipt whereof is hereby acknowledged, the Seller hereby sells, transfers, assigns and sets over to the Assignee named on the face of this Contract or, if there is none, then _____, its successors and assigns, or any subsequent assignee, all right, title and interest in and to the Contract and to the Vehicle described in this Contract, and to all monies due and to become due under this Contract, together with all rights and remedies under said Contract, with power in the Assignee to assign the same, either in Assignee's own name, or in the name of the Seller, or in the Assignee's name, and to do all such legal or other proceeding as the Seller might have taken, except for this Assignment. Seller, to induce the Assignee to purchase this Contract, warrants that this Contract is genuine, unamended and enforceable without defense or counterclaim and the Contract accurately reflects the transaction at all respects, that all parties to the Contract are over eighteen years of age, have the legal capacity to execute the Contract and that all signatures are genuine, that the Buyer (or Co-Buyer) has accepted delivery of the Vehicle and it is titled to the Buyer (or Co-Buyer), that the Vehicle is properly described in the Contract, that the downpayment has been paid by Seller in cash, and not its equivalent (except as specifically shown in the Contract) and has not been borrowed from the Seller or a loan arranged by or procured on behalf of the Buyer by the Seller or anyone in connection with the Seller, that the amount shown by the Seller for any property taken in trade is correctly stated, that the Assignee is acquiring a purchase money security interest in the Vehicle. Seller covenants and warrants that the Buyer was informed and clear of any lien, claim and encumbrance, and that the Seller has the power to assign the Contract to the Assignee. Seller covenants and warrants that the Buyer was informed and advised, in writing and fully hereinafter, in the Buyer has voluntarily indicated that the Buyer wishes any Group Credit Insurance and has met all criteria for obtaining such insurance, the Seller warrants that such coverage has been obtained and paid for and agrees to hold the Assignee harmless from any claims with respect to such insurance, and promptly to make the appropriate refunds if such insurance is cancelled and/or the Contract is prepaid. Upon breach of any of the provisions in this Assignment or if the Buyer, Co-Buyer or Guarantor voidly the Assignee directly or indirectly, or – whether or not there is a default in payment – Seller agrees, if demanded, immediately to repurchase this Contract for the unpaid balance, including earned Finance Charges as of the date of repurchase. Seller has fully complied with all applicable laws and regulations, including, without limitation, the Fair Credit Reporting Act, the Truth-in-Lending Act and the Equal Credit Opportunity Act. Seller agrees to hold harmless and indemnify Assignee for any loss sustained as a result of any claim or breach of the above. Seller, whether or not this loss is sustained as a result of a judicial determination. Seller hereby consents to any extensions of time for payment, modification of terms, release or substitution of parties or Vehicle and agrees that the Assignee's failure to perfect its lien on the Vehicle will not affect this Assignment. The Vehicle described in the subject of this Contract is now and unread (unless stated otherwise in the Contract). The Vehicle's collateral of title is not branded title as specified in 15 N.Y.C.A.R. §20.20. To the best of Seller's knowledge and belief, the representations on the Buyer's credit application are true and the Buyer will not use or permit the use of the Vehicle in violation of any law. Seller agrees that if any of the warranties, covenants or guarantees be breached, or if any representation be untrue, the Seller will, upon demand, repurchase the Contract from the Assignee and pay for the Contract, in such amount equal to the entire unpaid balance due on the Contract, with accrued interest, together with the accrued attorneys' fees. The Seller agrees that the repossession of the Vehicle from the Buyer for any cause shall not release the Seller from the obligations of this Assignment. The Assignee is authorized to correct any and all patent errors in this Contract.

## FULL RECOURSE ASSIGNMENT

Seller agrees, in addition to the warranties above, that in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, upon demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, including any earned Finance Charges then due.

Seller/Assignor _____     Date _____     Title _____

## FULL REPURCHASE

Seller agrees, in addition to the warranties stated in the first Assignment section set forth above, that in the event of default by Buyer under this Contract and provided that Assignee shall take possession of the Vehicle and tender delivery of same to Seller, Seller will, upon demand by Assignee, forthwith repurchase the Contract and/or Vehicle (regardless of condition) from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, including any earned Finance Charges then due and expenses incurred in such taking and delivery of the Vehicle.

Seller/Assignor _____     Date _____     Title _____

Seller agrees, in addition to the warranties stated in the first Assignment section set forth above, that, if the Buyer defaults in any manner under this Contract, the following additional covenants shall apply, such covenants being more specifically defined in an agreement between Seller and Assignee:

Type of Assignment _____

Seller/Assignor _____

Date _____     Title _____

BANCONSUMER FORM NT 734-LC-36  11/1/2006  Copyrighted

NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.

UNITED STATES
POSTAL SERVICE.

**P** | US POSTAGE PAID
**$10.10** | Origin: 30272
04/30/25
1272490305-5

PRESS FIRMLY TO SEAL

## PRIORITY MAIL®

0 Lb 7.70 Oz

**RDC 03**

EXPECTED DELIVERY DAY:    05/03/25

C030

SHIP
TO:

2 NIAGARA SQ
BUFFALO NY 14202-3350

### USPS TRACKING® #



9505 5117 3422 5120 5962 48



USPS.COM/PICKUP

PRIORITY® MAIL

FROM:

USDC - WDNY
MAY - 5 2025
BUFFALO

FROM:
Andrea
32c1 k
East P

TO:
Robert
courtho
2 Niac
Buffall

Label 228, December

- Expec
- Dome
- USPS
- Limite
- When

*Insurance
Domestic
** See Inte

apply).*

ernational destinations.

equired.

tions see the

mitations of coverage.

o schedule free Package Pickup,
scan the QR code.

**FLA**
ONE RA

**TRA**


PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER
POUCH

how2recycle.info

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

STAGE PAID

.10

Origin: 30272
04/30/25
1272490305-5

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

MAIL®

0 Lb 7.70 Oz

RDC 03

5/03/25

PR IORITY
MAIL

USDC - WDNY
MAY -5 2025
BUFFALO

FROM:    23 - CV - 294

C030

s apply).*

nternational destinations.



**UNITED STATES POSTAL SERVICE®**    |    **PRIORITY® MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

equired.

ions see the

mitations of coverage.

FROM:
Andrea L. Marin
3201 kenelworth Dr. #5
East point, GA 30344

schedule free Package Pickup,
scan the QR code.

TO: Attn: Clerks Office
Robert H. Jackson U.S.
courthouse
2 Niagara Sq.
Buffalo, NY 14202



USPS.COM/PICKUP

G® #

5962 48





Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE

PAPER
POUCH

how2recycle.info

October 2023
1/2 x 9 1/2