UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDREA L. MARION,

               Plaintiff,

    v.                                                                   23-CV-294-LJV
                                                                          DECISION & ORDER
TRANSITOWNE JEEP CHRYSLER
DODGE RAM WILLIAMSVILLE,

               Defendant.

_____

On March 31, 2023, the pro se plaintiff, Andrea L. Marion, commenced this action against Transitowne Jeep Chrysler Dodge Ram Williamsville ("Transitowne"). *See* Docket Item 1. The complaint alleged that Transitowne violated the federal Truth in Lending Act ("TILA"), breached the fiduciary duty that it owed to Marion, violated New York General Business Law § 349 ("GBL section 349"), and committed common law fraud. Docket Item 1; *see* Docket Item 20 at 1. On June 13, 2024, Transitowne moved to dismiss the complaint.[1] Docket Item 4. This Court then granted the motion to dismiss but allowed Marion to amend her complaint to correct the deficiencies identified in the Court's decision. Docket Item 20.

Marion filed an amended complaint, Docket Item 21, and Transitowne again moved to dismiss, Docket Item 22. After Marion responded, Docket Item 24, Transitowne replied, Docket Item 25.

---

[1] The complaint originally named Five Star Bank as a defendant, *see* Docket Item 16 (version of complaint filed as Docket Item 1 with personally identifiable information redacted), but Marion has since dismissed her claims against that defendant, *see* Docket Items 18 and 19.

For the reasons that follow, Transitowne's motion to dismiss the amended complaint is granted.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

**DISCUSSION**[2]

### I.   TILA CLAIM

In deciding Transitowne's first motion to dismiss, this Court explained that "Marion's TILA claim . . . appear[ed] to be time-barred" because it was filed more than a year after the alleged violation.  *See* Docket Item 20 at 8-11.[3]  Among other things, this Court rejected Marion's argument that the "discovery rule" saved her claims.  *See id.* at 10.  But because Marion was proceeding pro se and "[b]ecause it [wa]s possible that Marion might plead facts demonstrating that her claims [we]re not time-barred," the Court allowed her to amend her complaint.  *Id.* at 11.

Marion's amended complaint does not plead such facts.  Rather, she again asserts that the statute of limitations should be tolled because "Transitowne failed to provide complete disclosures, submitted a materially different version of the contract to the bank, and denied [her] access to [the] original documents."  Docket Item 21 ¶ 42.  Marion also says that she "diligently investigated the matter after noticing errors in her credit report in late 2022" and that she "filed suit within one year of discovery."  *Id.*  In other words, Marion again seeks equitable tolling until the time she discovered the alleged failure to disclose.

As this Court explained in its prior decision, "courts in this circuit have consistently stated that TILA's statute of limitations for damages claims runs from the

---

[2] The Court assumes the reader's familiarity with the allegations in the amended complaint, Docket Item 21, and will refer only to those facts necessary to explain its decision.

[3] Page numbers in docket citations refer to ECF pagination.

time of the occurrence, not the time of [the] discovery [of the nondisclosure]."  Docket

Item 20 at 10 (alterations in original) (quoting *Smith v. Mills*, 2021 WL 4133867, at *4

(E.D.N.Y. Sep. 10, 2021)).  And those "holdings make good sense because if the very

nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the

statute of limitations, the effect of the statute of limitations would be nullified."  *Cardiello*

*v. Money Store, Inc.*, 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001) (citing *Hughes v.*

*Cardinal Fed. Sav. & Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Ohio 1983)), *aff'd sub*

*nom. Cardiello v. Money Store*, 29 F. App'x 780 (2d Cir. 2002) (summary order).

According to Marion, Transitowne "provided [her] a version of the contract

missing required TILA disclosures, including but not limited to the number of payments,

annual percentage rate (APR), and the finance charge box."  Docket Item 21 ¶ 7.  In

other words, she alleges that the violations were apparent on the face of the document

she signed.  And as this Court explained previously, Transitowne's alleged failure to

provide the original documents upon her request occurred in 2022—well outside the

statute of limitations period.  *See* Docket Item 20 at 10.

Nor does the fact that Transitowne allegedly "submitted a version of the

agreement that contained different disclosures" to the bank, Docket Item 21 ¶ 18, save

Marion's claims.  As an initial matter, it is not clear how submitting a different version to

the bank would constitute fraudulent concealment *from Marion*.  *See Cardiello*, 2001 WL

604007, at *4 (explaining that for equitable tolling to apply, "defendant [must have]

fraudulently concealed *from the plaintiff* his cause of action *during the time in which*

*plaintiff could have brought that action*" (first emphasis added)).  What is more, Marion

does not allege any facts demonstrating that she "exercised due diligence to discover

h[er] cause of action *prior to the running of the statute*" but that the alleged submission of an alternate contract to the bank "frustrated discovery notwithstanding such diligence." *See Hughes*, 566 F. Supp. at 838 (emphasis added) (quoting *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 597 (4th Cir.1976)). Instead, Marion alleges that she "diligently investigated the matter after noticing errors in her credit report *in late 2022*," Docket Item 21 ¶ 42 (emphasis added), well after the statute of limitations had expired.

Therefore, Marion's TILA claim is time-barred, and the Court grants the motion to dismiss that claim.[4]

## II.    STATE LAW CLAIMS

Marion's other claims against Transitowne for breach of fiduciary duty, breach of GBL section 349, and common law fraud all arise under state law. To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the federal court has jurisdiction based on the parties' diversity of citizenship or plead a related

---

[4] Additionally, as Transitowne observes, Docket Item 22-1 at 15-17, the documents Marion attaches to her amended complaint appear to undermine her claim that Transitowne failed to make the required disclosures. In particular, rather than suggesting that the bank's version of the contract was altered, it appears that the bank received the top version of a carbon copy form, which showed the writing more clearly, and Marion received a more faded copy from a bottom sheet. *See* Docket Item 21 at 28-35; *see also* Docket Item 22-1 at 11 (Transitowne's noting that "[t]he Five Star Bank documents include a clearer version of the Retail Installment Contract"). And "the contents of [a] document [attached to the complaint] are controlling where a plaintiff has alleged that the document contains, or does not contain, certain statements." *Roth v. Jennings,* 489 F.3d 499, 511 (2d Cir. 2007); *see also Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by such a document [attached or referenced in the complaint], those allegations are insufficient to defeat a motion to dismiss."). Therefore, even if Marion's TILA claim were timely, it likely would be dismissed on the merits.

federal claim giving the court supplemental jurisdiction over the state law claim. *See, e.g., Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26-27 (2025).  But a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

### A.    Diversity Jurisdiction

Diversity jurisdiction "requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Estate of Gallo v. Bob Evans Restaurant*, 2019 WL 350163, at *1 (W.D.N.Y. Jan. 29, 2019) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)); *see* 28 U.S.C. § 1332(a).  In its prior decision, this Court noted that although it seemed that Marion and Transitowne were citizens of different states, Marion had not pleaded the minimum threshold of $75,000 to establish diversity jurisdiction. *See* Docket Item 20 at 12.  Thus, the Court explained, "[i]f Marion wishes to bring state law claims under the Court's diversity jurisdiction, then any amended complaint must plead that the parties are citizens of different states and that her claims exceed $75,000." *Id.*

Marion's amended complaint seeks the following sums: $15,000 in actual damages; $22,402.50 in statutory damages under TILA; $1,000 in statutory damages under GBL section 349; $50,000 in punitive damages; and $20,930 in restitution. Docket Item 21 at ¶¶ 86-94.  Although on paper those numbers total more than $75,000, for the reasons that follow, the Court finds that Marion has not established an amount in controversy of at least that amount.  More specifically, the Court agrees with

6

Transitowne, *see* Docket Item 22-1 at 25-26, that punitive damages are unavailable on

Marion's claims.  Thus, she has pleaded at most approximately $37,000 in damages.[5]

### 1.    Legal Standard

"A party invoking the jurisdiction of the federal court has the burden of proving

that it appears to a 'reasonable probability' that the claim is in excess of the statutory

jurisdictional amount."  S*cherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d

394, 397 (2d Cir. 2003) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d

781, 784 (2d Cir. 1994)).  "The amount in controversy must be non-speculative in order

to satisfy the statute[,] and conclusory allegations that the amount-in-controversy

requirement is satisfied are insufficient."  *Trisvan v. Burger King Corp.*, 2020 WL

13851936, at *3 n.4 (E.D.N.Y. Mar. 2, 2020); *see Hall v. EarthLink Network, Inc.*, 396

F.3d 500, 507 n.5 (2d Cir. 2005) ("In a diversity case, if a court makes a face-of-the-

complaint determination that the $75,000 amount in controversy cannot be recovered 'to

a legal certainty,' the case is dismissed for lack of subject matter jurisdiction." (quoting

S*cherer*, 347 F.3d at 397)); *Valente v. Garrison From Harrison LLC*, 2016 WL 126375,

at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that

---

[5] As noted above, Marion's TILA claim is dismissed, so those alleged damages are inapplicable.  That leaves $15,000 in actual damages, $1,000 in GBL section 349 damages, and $20,930 in restitution, totaling $36,930.  Although the Court need not reach this issue, it agrees with Transitowne that at least some of the alleged restitution is likely duplicative of the actual damages Marion claims as they both include payments Marion made under the contract.  *See* Docket Item 22-1 at 25 (explaining that "actual damages and the $20,930 appear to be duplicative as [Marion's] explanation for her actual damages number includes '[f]inancial losses tied to monthly payments made under a misrepresented contract'" (second alteration in original) (quoting Docket Item 21 ¶ 87)).  The Court also questions whether Marion would be entitled to restitution for *all* payments made under a contract—even a contract that included inaccurate disclosures—when she received the car that was the basis for the payments.

[an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

Moreover, when "the jurisdictional amount includes punitive damages, those punitive damages will be considered with heightened scrutiny." *Trisvan*, 2020 WL 13851936, at *3 n.4; *see Cohen v. Narragansett Bay Ins. Co.*, 2014 WL 4701167, at *3 n.4 (E.D.N.Y. Sep. 23, 2014) ("[T]he Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages."). And that makes sense: Were it not the case, a plaintiff could manufacture federal jurisdiction with a conclusory and legally unsupported allegation of punitive damages.

So the question is whether Marion has established that punitive damages might be available on her claims under New York law. For the reasons that follow, the Court finds she has not.

### 2.    Breach of Fiduciary Duty and Common Law Fraud

"Under New York law, punitive damages demand a high level of moral culpability and are not available where a plaintiff only alleges private wrongs." *Centra Devs. Ltd. v. Jewish Press Inc.*, 2018 WL 1788148, at *6 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1445574 (E.D.N.Y. Mar. 23, 2018)); *see Carling v. Peters*, 2013 WL 865842, at *6 (S.D.N.Y. March 8, 2013) (explaining that for New York fraud claims arising out of a contractual relationship, "a decisive issue in considering whether punitive damages are available is whether [the] conduct was directed at the public generally"). Thus, "district courts have consistently held that punitive damages are unavailable where a fraud claim is contract-based and does not seek to vindicate

8

interests outside the relationship between the plaintiff and defendant." *Carling*, 2013 WL 865842, at *7 (collecting cases); *see, e.g.*, *Leviton Mfg. Co. v. Reeve,* 942 F. Supp. 2d 244, 270 (E.D.N.Y. Feb. 7, 2013) ("[W]here the parties are in a contractual relationship, courts have only allowed punitive damages for fraud where the additional damages are 'necessary to vindicate a public right.'") (quoting *N.Y. Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 315, 662 N.E.2d 763, 767 (1995))); *Mayline Enters., Inc. v. Milea Truck Sales Corp.,* 641 F.Supp.2d 304, 311 (S.D.N.Y.2009) ("New York courts have refused to award punitive damages where the plaintiff did not meet the 'public harm' requirement, no matter how improper the defendant's activity.").  Likewise, in breach of fiduciary duty cases in which the defendant "would have no duty to the plaintiffs in the absence of a contract," courts have held punitive damages are not available unless the plaintiff "show[s] that the defendant['s] illegal conduct was part of a pattern of conduct directed at the public generally." *See Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 124 (E.D.N.Y. 2007) (citing *N.Y. Univ.*, 87 N.Y.2d 308, 662 N.E.2d 763, and *Rocanova v. Equitable Life Assurance Soc'y. of the U.S.*, 83 N.Y.2d 603, 634 N.E.2d 940 (1994)).

Here, Marion's case "is not a class action, nor [is she] seeking redress for a general injury to the public." *See Agnesini v. Doctor's Assocs., Inc.*, 2012 WL 5873605, at *7 (S.D.N.Y. Nov. 13, 2012).  Rather, she alleges that Transitowne failed to make certain disclosures in connection with her contract and then fraudulently submitted a different version of her contract to the bank.  Docket Item 21 ¶ 42.  In other words, her

fraud allegations do not go beyond Transitowne's conduct in connection with a single contract.[6]

In opposing the motion to dismiss, Marion says that her allegations "suggest[] a broader pattern of behavior," that this "is likely not the first time," and that it "may have happened to others." Docket Item 24 at 11-12. But there are no facts alleged in the amended complaint that support these speculative and conclusory statements. *See generally* Docket Item 21. Rather, the wrongs alleged in the amended complaint and for which Marion seeks redress are related only to her contract with Transitowne. *See Agnesini*, 2012 WL 5873605, at *7 (finding no basis for punitive damages despite plaintiffs' allegations that defendant "engaged in a 'pattern and practice of gross negligence' that impacted unsuspecting customers 'worldwide'" because there was "little to show that [p]laintiffs [we]re in fact enforcing a public right").

The Court therefore finds that Marion would not be entitled to punitive damages on her claims for common law fraud or breach of fiduciary duty.

### 3.    GBL Section 349

GBL section 349 "provides for layered damages: actual damages, or fifty dollars, whichever is greater" and "discretionary treble damages up to a cap of $1,000." *Hobish v. AXA Equitable Life Ins. Co.*, 43 N.Y.3d 442, 456, 264 N.E.3d 223, 232-33 (2025)

---

[6] Nor do Marion's allegations support any fiduciary duty owed outside the contract. *See Peabody v. Northgate Ford, Inc.*, 16 A.D.3d 879, 880-81, 794 N.Y.S.2d 452, 454 (3d Dep't 2005) (finding that "[t]o the extent that plaintiff's fraud claim [wa]s premised upon the notion that defendants breached a purported fiduciary duty to her, it was properly dismissed" because plaintiff failed to establish "any facts which would demonstrate the existence of any fiduciary duty owed to her by defendants or any relationship approaching privity between her as the purchaser of an automobile and defendants as a dealership [and] its finance manager or salesperson").

(citing N.Y. Gen. Bus. Law § 349(h)).  Until last year, federal courts interpreting New York law were divided as to whether a private plaintiff also could recover punitive damages in excess of the $1,000 cap.  *Compare Guzman v. Mel S. Harris & Assocs., LLC*, 2018 WL 1665252, at *14 (S.D.N.Y. Mar. 22, 2018) (rejecting argument that plaintiff could "recover punitive damages in excess of those permitted by GBL [section] 349 when he does not assert an independent claim that provides a basis for such damages"), *with Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16, 23 (E.D.N.Y. 2017) (concluding that GBL section 349 "allows for recovery of punitive damages in excess of $1,000.00").  In January 2025, however, the New York State Court of Appeals settled the question and held "that punitive damages for section 349(h) claims are limited to the treble damages provided by the statute."  *Hobish*, 43 N.Y.3d at 455, 264 N.E.3d at 232.  Thus, punitive damages in excess of $1,000 in treble damages are not available on Marion's GBL section 349 claim.

* * *

Accordingly, the Court finds that, "'to a legal certainty,' punitive damages [a]re not available in this case."  *See Carling*, 2013 WL 865842, at *6.  And without those damages, Marion fails to meet the amount-in-controversy requirement.  *See id.* at *9.  This Court therefore lacks diversity jurisdiction over Marion's state law claims.  *See* 28 U.S.C. § 1332.

### B.    Supplemental Jurisdiction

Without diversity jurisdiction, the Court cannot entertain Marion's state claims unless it opts to retain supplemental jurisdiction over those claims.  For the reasons that follow, this Court declines to do so.

11

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to retain supplemental jurisdiction over state claims, a court should "consider factors such as judicial economy, convenience, fairness, and comity." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996). When only state law claims remain before trial, however, those factors usually weigh in favor of declining jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988)).

Although this case has been pending for some time, it is still in the early stages of litigation. No discovery has taken place, and a date has not been set for trial. *Cf. Nowak*, 81 F.3d at 1192 (holding that a magistrate judge properly retained jurisdiction after the federal claims in the case were dismissed "only nine days before [the case] was set for trial"). If jurisdiction were to remain with this Court—assuming without deciding that the state claims are viable—the next step would be to refer the case to a magistrate judge unfamiliar with the facts of the litigation to coordinate discovery. Thus, retaining jurisdiction serves neither judicial economy nor convenience.

Moreover, "[n]eedless decisions of state law [by a federal court] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Kolari*, 455 F.3d at 122 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Declining to exercise supplemental jurisdiction therefore also promotes the values of fairness and comity.

## **CONCLUSION**

For the reasons stated above, Transitowne's motion to dismiss, Docket Item 22, is GRANTED as to Marion's TILA claim.  The Court finds that it lacks diversity jurisdiction over Marion's state law claims and declines to exercise supplemental jurisdiction over those claims.  The Clerk of Court shall enter judgment and close this case.

This Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   March 30, 2026
　　　　 Buffalo, New York

　　　　　　　　　　　　　　　　 */s/ Lawrence J. Vilardo*
　　　　　　　　　　　　　　　　 LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　 UNITED STATES DISTRICT JUDGE